[Civ. No. 25139. Fourth Dist., Div. Two. Dec. 23, 1981.]

**EDWARD F. PARKER, Plaintiff and Appellant, v.
CITY OF FOUNTAIN VALLEY et al., Defendants and Respondents.**

**COUNSEL**

Silver & Kreisler and Richard M. Kreisler for Plaintiff and Appellant.

Rourke & Woodruff, Thomas L. Woodruff and Alan R. Burns for Defendants and Respondents.

---

OPINION

MORRIS, J.—Appellant, Edward F. Parker, appeals the denial of his petition for a writ of mandate, by which he sought reinstatement to his permanent position in respondent city's police department.

On May 6, 1978, appellant was employed with respondent City of Fountain Valley as a police sergeant, and was the senior officer in charge in responding to a complaint about a party in a residential neighborhood. Appellant was subsequently charged with using excessive force in connection with the arrest of certain party-goers. Appellant was given notice of the charges, a copy of the materials upon which the charges were based, and an opportunity to respond to those charges at a predisciplinary hearing held before the Chief of Police, M. K. Fortin, on March 13, 1979. At the hearing appellant responded to written statements made by other officers who were present at the scene of the arrest, but no witnesses were called or cross-examined at the hearing.

Following the hearing, but before taking any action, Fortin reinterviewed the officers who had made statements about the incident and obtained additional written statements from two of the officers, Bean and Quinzio.

On March 16, 1979, Chief Fortin issued a notice of action, sustaining two of three charges and terminating appellant from his employment with the city police department. Thereafter, appellant requested an administrative hearing before the city manager pursuant to section 2.52.160 of the Fountain Valley Municipal Code.[1] Appellant was pro-

---

[1]Section 2.52.160 provides in pertinent part as follows: "Right of appeal. Any employee below department head level shall have the right of appeal to the city manager from any disciplinary action taken by his department or division head. Such appeal must be filed with the city manager within ten working days after receipt of written notice of such disciplinary action.... [¶] The city manager shall cause such appeal to be investigated and shall conduct a hearing as provided in accordance with the requirements and procedures set forth in the personnel rules adopted pursuant to this chapter. The decision of the city manager shall be final except as provided in Section 2.52.200."

Section 2.52.200 provides as follows: "Final authority of council. The city council specifically reserves the right, in cases it deems exceptional, to act as the final authority."

vided with a copy of the "Hearing Procedure for Appeals from Disciplinary Proceedings,"[2] which procedure provides, inter alia, that an employee, appealing from a disciplinary decision of a department head, shall be allowed to appear personally, to present evidence and cross-examine witnesses, to be represented by counsel, to have a decision based upon evidence submitted at the hearing and to have findings of fact. It also provided that the burden of proof shall be on the appellant; that he shall proceed first in producing the evidence, and that the standard of proof is the "substantial evidence standard."

Following the hearing held pursuant to these rules the city manager issued his notice of ruling, sustaining the charges upon which the disciplinary action was taken and upholding the appellant's termination from his city employment, effective March 16, 1979. The city council did not exercise its right to reconsider the action, and appellant filed his petition for a writ of administrative mandamus. This appeal is from the denial of the writ.

Appellant makes the following contentions on appeal: (1) he was denied procedural due process at the predisciplinary hearing; (2) he was not provided applicable due process protections at the administrative hearing before the city manager; (3) the hearing officer was biased; (4) the trial court failed to apply the proper standard of review, i.e., the independent judgment standard; (5) the evidence is insufficient to support the charges; (6) the penalty of termination is excessive, is based on the improper consideration of prior disciplinary action, and constitutes an abuse of discretion.

### The Incident

On May 6, 1978, appellant responded to a call that a party in progress at an Azalea Avenue residence was creating a disturbance in the neighborhood. Officers Minna, Becker, Quinzio and Bean also responded. Ultimately four arrests were made. Appellant was the senior officer present and was in charge of the scene because of his rank.

When appellant and Minna, who arrived at approximately the same time, entered the residence, they gave an order to the party guests to disperse and the guests slowly began to move out of the house. When the other officers arrived appellant and Minna were already in the resi-

---

[2]This procedure is contained in the personnel rules adopted pursuant to section 2.52.160 of the Municipal Code.

dence and the guests were beginning to exit the house. Quinzio, Becker and Bean remained on the outside to assist in keeping the people moving away from the party. As appellant and Minna came out of the house, some of the guests had begun congregating on and around the front lawn of the residence.

While Quinzio, who had remained outside, was involved in a verbal confrontation with a guest named Dey, Minna began ordering the other guests to disperse away from Quinzio and Dey, and appellant became involved with a guest named O'Neal, who was verbally abusive and refusing to move away.

O'Neal was ultimately placed under arrest and handcuffed. In connection with that arrest, other officers related that they saw appellant kick O'Neal in the face and strike O'Neal while he was on the ground. Although appellant gave a conflicting version of the facts, the testimony of the other officers was in general agreement that appellant's acts were unprovoked.

Minna testified that, although O'Neal was verbally abusive, he did not do anything physically aggressive towards appellant. Minna observed appellant push O'Neal three or four times prior to Minna's attention being diverted to other confrontations. Although unaware of it at the time, Minna believes that his baton dropped from its holder at this time. He soon became aware of a scuffle between appellant and O'Neal. Minna then jumped on O'Neal's back and, with appellant's help, brought O'Neal to the ground in a face down position. O'Neal was then relatively still and did not resist as Minna commenced to handcuff him. He successfully placed the handcuffs on O'Neal's right hand, but when he tried to handcuff the left hand appellant pushed Minna's hand away and struck O'Neal in the rib cage at least three times.

When Minna was confronted with discrepancies between his administrative testimony and his police report, he testified that his report was a composite of his personal observations and descriptions of events given to him by other officers, and that appellant had told him to include a statement in the report which recited that appellant had been hit by O'Neal with a police baton.

Quinzio testified that when he had finished dealing with a guest named Page who was yelling obscenities, he noticed appellant, Minna and O'Neal. At that time the baton was lying on the sidewalk. Because

he feared that O'Neal might reach for it as he was taken to the ground, Quinzio struck O'Neal on the shoulder with his baton. At about that time he saw appellant push and then kick O'Neal, with the top of his foot contacting either O'Neal's chin or chest. Although Quinzio could not say whether the kick was justified, he did state that he saw no aggressive action by O'Neal between the push and the kick that would have justified the kick. Quinzio's attention was then diverted to a guest named Rodriguez and when he again looked toward appellant and O'Neal, O'Neal was in a "crouched or prone position, face down, with his head back and his hands behind him." Quinzio testified that he then saw appellant strike O'Neal in the face.

Becker testified that he saw appellant run up and push one of the guests with his open palms. During the pushing he also saw appellant kick the person in the face. A little later he saw Quinzio strike the person with his baton. Becker then found it necessary to take Rodriguez into custody, but as he turned around again he saw appellant strike the person who was then on his knees on the ground.

Bean, who responded to the scene after appellant, Minna, and Becker, walked to the middle of the street while dispersing the crowd. From there he observed the appellant kick O'Neal in the face but did not see the events leading up to the kicking. He also confirms that there was an unattended baton in the area of the confrontation, which he subsequently retrieved and stored in his vehicle.

One of the guests, James White, also testified to his recollection of the incident. His testimony was inconsistent with the testimony of the other witnesses. He saw O'Neal pushed against a car by two officers, neither being appellant. He saw some officer, not appellant, kick Rodriguez and Rodriguez was at the same time hit over the head, neck or back with a baton. He also saw O'Neal become enraged and charge one of the officers, and at this time he saw appellant "knee" O'Neal in the face.

Appellant testified that he first observed O'Neal while Becker and Rodriguez were becoming embroiled in a dispute. After advising O'Neal to leave the area he returned his attention to Becker and Rodriguez. He was then struck on his left side with some object. As he turned he saw O'Neal charging at him. In order to protect himself he raised his knee which came in contact with O'Neal's face. He then commenced trying to control O'Neal and with Minna's assistance brought

O'Neal to the ground and started the handcuffing process. Appellant observed that Minna was bending O'Neal's right arm in such a manner that it might dislocate O'Neal's shoulder. Appellant warned him to stop. Minna continued, so appellant pushed Minna's hand away on two occasions. While appellant was dealing with Minna, O'Neal started lifting appellant off the ground. It was at this time that appellant struck O'Neal in the ribs to force him back on the ground.

There was testimony by Officer Morrill, who was not present at the scene of the incident, but who was present in the briefing room, that the officers by a process of elimination determined that the dropped baton belonged to Minna. She also testified that Officer Bean at that time described one suspect as actually picking up the baton and swinging it at Officer Becker.

The charges giving rise to appellant's dismissal arose out of his handling of O'Neal. Initially appellant was charged with three acts of misconduct, to wit, (1) applying a karate kick to the face of O'Neal without provocation or justification, (2) kicking Rodriguez in the groin without provocation or justification, and (3) unnecessarily striking O'Neal while he was on the ground. The Rodriguez charge was not sustained by Chief Fortin; both of the O'Neal charges were sustained.

*Contentions and Discussion*

A. *The Predisciplinary Hearing*

Appellant contends that the city did not comply with procedural due process requirements before terminating him from his permanent position as police sergeant. Respondent concedes that prior to his termination appellant was a "tenured" employee who could be removed from his position only for cause.

■ It is now established that when a person has a legally enforceable right to receive a government benefit, provided certain facts exist, this right constitutes a property interest protected by the due process provisions of both federal and state Constitutions. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774].) In *Skelly* the California Supreme Court considered the constitutional adequacy of procedures provided by state law for the taking of punitive action against a permanent civil service employee. After an exhaustive analysis of recent federal and California opinions dealing with

questions of procedural due process, as applied to punitive action which results in the deprivation of a significant property interest, the court concluded: "It is clear that due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. However, . . . due process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 215; see also *Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]; and see *Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652 [147 Cal.Rptr. 502].)

■ Although this court has not been provided with any personnel rules which require a hearing which would meet the minimum requirements set forth in *Skelly,* it is apparent that initially there was an effort to comply. Appellant was given notice of the charges, a copy of the materials upon which the action was based, and a right to respond to the charges. However, following the hearing and before taking action, the chief of police considered new material, which had not previously been provided to appellant and as to which appellant had been given no opportunity to respond.

Appellant contends that this denied him the minimum safeguards required to satisfy due process. We agree.

The "Notice of Action" issued by Chief Fortin clearly shows that he relied on this new material in reaching his decision to terminate appellant. The notice of action reads in pertinent part as follows:

"I have considered the points raised by you and your legal counsel, have reread the statements of all officers concerned, and have re-interviewed the officers and obtained additional written statements (attached hereto) from Officers Bean and Quinzio. Based on all of the above, my determinations are as follows:

"1. Regarding the allegation that you applied a Karate kick to the face of Curtis Dale O'Neal without provocation or justification, I find this charge SUSTAINED. I base this finding on the following statements:

"a. Officer Becker has stated that O'Neal displayed no physical provocation before he was pushed and then kicked in the face. He relates that he was standing next to you when this occurred and apparently had a clear vantage point for observation.　　　.

"b. Officer Minna, although in his written statement he only mentions that O'Neal was 'brought to the ground,' in a subsequent oral interview stated that he had observed you and O'Neal standing face to face before you began pushing O'Neal. While Minna does not claim to have seen the kick because he then became involved in another disturbance, his statement does negate your contention that O'Neal initiated the physical force.

"c. Officer Quinzio, in his first written statement and in a subsequent oral interview, originally corroborated your version of the 'charge.' However, in a subsequent written statement (attached hereto), Quinzio has changed his version of the 'charge' to a situation wherein O'Neal was 'crouching.' He also saw what he believed to be a push and a kick.

"d. Officer Bean was interviewed after our *Skelly* hearing. A narrative synopsis of his oral statement to me is attached hereto. In it, he states that he saw you and O'Neal standing face to face, two to three feet apart, before you kicked him in the face. He further states that there was no aggressive action on the part of O'Neal prior to the kick.

"[Charge 2 was not sustained.]

"3. Regarding the unnecessary striking of O'Neal while he was on the ground, I find this charge SUSTAINED. I base this finding on the following:

"a. Officer Owen's statement merely confirms that some officer was striking O'Neal while he was on his knees or in a semi-prone position.

"b. Officer Becker observed you strike O'Neal while he was on his knees with his hands behind his back.

"c. Officer Minna stated that while he was attempting to handcuff O'Neal, and actually had his right hand cuffed, that you pushed away his attempt to cuff his left hand, and struck O'Neal in the body with

your hand/fist at least three times. Minna states that O'Neal was under control prior to your striking him.

"d. Officer Quinzio saw you strike O'Neal while O'Neal was down on the ground. Quinzio thinks that O'Neal may have been restrained or handcuffed at the time of the striking.

"All of the above actions occurred while you were the field supervisor/sergeant, which exacerbates the seriousness of the offenses. Additionally, I believe that enough evidence has come to light to support additional charges for falsifying police reports and for falsifying a felony charge. These, if followed up on, are more properly the subject of a supplemental investigation.

"Based on my findings on each of the charges, and based on the seriousness of those charges and the lack of mitigating circumstances surrounding your actions, I hereby terminate you from employment with the Fountain Valley Police Department, effective immediately. (See F.V.P.D. Rules and Regulations Section 5.3.44.)

"You are advised that you have a right to appeal to the City Manager if such appeal is filed within ten (10) working days. Failure to so file an appeal is a waiver of your right to appeal. The appeal must be in writing, must be either verified before a Notary Public or made under penalty of perjury, and must state specifically the facts upon which it is based. (F.V.M.C. Section 2.52.160.)"

The notice makes it clear that (1) the decision to terminate appellant was based on the findings on each of the charges; (2) the finding concerning the kicking charge was based on statements made by Minna, Quinzio and Bean after the *Skelly* hearing; (3) the posthearing statements of these officers were substantially different from, and in some instances in conflict with, the statements of the same officers which had been furnished to appellant as the material supporting the charges; and (4) appellant was given no opportunity to respond to the charges following the receipt of these materials and prior to his termination.

The fact that he was given a right of appeal to the city manager does not satisfy the due process requirements for preremoval safeguards. In *Skelly* the applicable statutes also provided for a full evidentiary hearing within a reasonable time after the effective date of the punitive

action and provided for compensation for lost wages if the action was found to be improper. However, the Supreme Court pointed out that these postremoval safeguards do nothing to protect the employee who is wrongfully disciplined against the temporary deprivation of property to which he is subjected pending a hearing, and because of this failure to accord the employee any prior procedural protections to minimize the risk of error in the initial removal decision, held the applicable provisions of the state Civil Service Act unconstitutional.

We conclude that the hearing accorded appellant did not fulfill the minimum constitutional requirements in that appellant was not provided with a copy of materials upon which his termination was based and was not accorded a right to respond thereto.

Appellant also contends that the preremoval procedures were defective on the additional ground that he was not provided notice and an opportunity to respond to other material considered by the police chief. The materials before the police chief included evidence that in July 1973, appellant was involved in an incident which resulted in a two-day suspension for delivering a karate kick to a suspect. This was not included in the charges and appellant was not given an opportunity to respond.

There is no merit to appellant's contention that the failure to include the 1973 incident in the charges resulted in denying him procedural due process. It is clear from the record that the 1973 disciplinary incident was considered by the chief of police for the limited purpose of considering the appropriate punishment. Appellant knew of the prior disciplinary action and had not appealed the action. He could not reopen the merits of that action. Since he does not dispute the fact of his suspension, he was not prejudiced by the failure to include the 1973 incident in the charges filed against him.

B. *The Administrative Hearing*

Appellant contends that he was denied due process at the administrative hearing before the city manager, because he was required to carry the burden of proof and the burden of producing evidence.

The rules for the hearing procedure for appeals from a disciplinary decision of a department head provided in pertinent part that: "V. The

burden of proof shall be on the party seeking to appeal the decision of the Department Head" and "VI. The procedure for the hearing should be as follows: ... [¶] B. The appellant shall make his opening statement and put on his case, followed by the City. Cross-examination will be allowed at appropriate times."

Respondent contends that the respondent did in fact carry the overall burden of proof in discharging appellant and that the "informality" of the hearing process did not deprive appellant of a fair hearing. Respondent points out that the phrase "burden of proof" may refer to the burden of producing evidence or it may refer to the burden of proof which requires a party to carry the burden of persuasion. Respondent now contends that, despite the language of the rules which appears to require the appellant to carry both burdens, the city did in fact carry the burden of persuasion so that appellant was not prejudiced by the rules.

Unfortunately, the record does not support this contention. At the beginning of the administrative hearing the assistant city attorney made the following statement:

Mr. Burns: "As to the burden of proof, the burden of proof was on the City at the time of the initial taking of the disciplinary action; namely, on the City Manager's office. At that time the burden was carried since this is now an appeal. The burden has shifted."

With respect to the production of evidence the assistant city attorney stated as follows:

Mr. Burns: "As I discussed with everyone else present except for Sergeant Parker, I'm going to sort of mix things up a little bit for convenience's sake for your witnesses, instead of calling your witnesses back twice and Mr. Stapleton putting on his case followed by mine, I'm going to make my opening statement. And I will attempt to get all my evidence in by cross examining some of the witnesses that Mr. Stapleton will call, and thereby try and cut down on the length of this proceeding.

"So with that in mind I would like to make my opening statement to the City Manager, and I ask that he take a few notes down on what I believe to be the pertinent things in this case...."

A review of the administrative record reveals that the procedure as outlined was indeed followed and that *all* witnesses were initially called by appellant and were thereafter questioned by the assistant city attorney as if under cross-examination.

Moreover, there is nothing in the record to suggest that the assistant city attorney and the city manager did not believe that the burden of proof, as distinguished from the burden of producing evidence, had shifted to appellant. To the contrary, the record makes it quite clear that they did require appellant to assume the burden of proof. The statement by the assistant city attorney with respect to the burden of proof followed an objection by appellant's attorney, Mr. Stapleton, which was in pertinent part as follows:

"At this time then I would like to make some comment with commencing this hearing. On behalf of Sergeant Parker on the 13th of March, we had a meeting—so-called meeting—at Chief Fortin's— Chief of Police, City of Fountain Valley—office, which was supposed to be a Skelly hearing. At that hearing there were, of course, no cross examination of witnesses, no witnesses were present, Sergeant Parker and myself were present with the Chief and Captain Rowland and Mr. Burns. And we were allowed at that time to present Officer—or Sergeant Parker's conception and statement as to what occurred with the incident of May the 5th of 1978, at 23:59 hours.

"We had, as I said, there were no swearing of witnesses; there was no right of cross examination; no due process as prescribed by Skelly at that time, and yet that's called a Skelly hearing.

"We're presently here today on an appeal from that decision of the Chief of Police to terminate Sergeant Parker, and we have received certain procedures from Mr. Burns in the City of Fountain Valley as to follow at this proceeding. . . .

"Also the City has told us at this point that the burden is upon us, which I believe is entirely wrong, in that in any disciplinary action such as termination or days off, the—I believe, the burden should be on the City to sustain their allegations and charges. Not that the burden should be upon us at this time to put on our side of the case, or proceed first and put our side of the case under the present circumstances. . . ."

If either the assistant city attorney or the city manager did not believe the burden of proof had shifted, they should have so stated.

██ ██ It is axiomatic, in disciplinary administrative proceedings, that the burden of proving the charges rests upon the party making the charges. (*Layton* v. *Merit System Commission* (1976) 60 Cal.App.3d 58, 64 [131 Cal.Rptr. 318]; *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 582 [103 Cal.Rptr. 306].)

Respondent recognizes that the city had this burden, but asserts that the burden was satisfied at the proceeding before the police chief and that thereafter the burden shifted to appellant. This could only be the case if there had been a prior evidentiary hearing. The obligation of a party to sustain the burden of proof requires the production of evidence for that purpose. (*Layton* v. *Merit System Commission, supra*, 60 Cal. App.3d 58, 66.)

Prior to the administrative hearing before the city manager, there had been no production of evidence. The statements by appellant's fellow officers, which were used as the basis of the charges, were not sworn statements and no witnesses testified at the proceeding wherein appellant was given a pretermination opportunity to answer the charges. Therefore, prior to the hearing before the city manager no evidence had been produced. (See *La Prade* v. *Department of Water & Power* (1945) 27 Cal.2d 47, 51-52 [162 P.2d 13].) Since the administrative hearing was the first evidentiary inquiry into the facts giving rise to appellant's discharge, the city, not the employee, was required to bear the burden of proof.

Although respondent argued at the administrative hearing that the proceeding before the city manager was appellate in nature and that appellant had the burden of proof, respondents now contend that by placing the charges before the city manager, the city carried the burden of proof by establishing a "prima facie" case. The contention has no merit. As previously noted, the charges and even the reports of the other officers were not evidence. They were merely the materials upon which the charges were based which, in turn, were required to be proved in order to sustain the punitive action.

City contends that the proceedings, although informal in nature, did provide appellant an adequate opportunity to respond to charges and to place all of the evidence before the city manager. The city cites two

cases in support of this contention. Neither case supports respondent's position.

In *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162], a licensed physician and surgeon was notified that his hospital privileges had been suspended. There followed three hearings, as provided in hospital bylaws. The first, a preliminary hearing which is not described in the opinion; the second, a formal hearing before a judicial review committee at which evidence was presented and a court reporter was present and transcribed all proceedings; and, finally, an appellate review before the board of directors. The board upheld the decision of the judicial review committee, which had sustained the suspension, and recommended that Anton not be reappointed to the medical staff. Plaintiff contended, inter alia, that a hospital bylaw placing the burden of going forward with the evidence and the burden of proof upon him violated the common law requirement of a minimal fair procedure which is applicable to private hospitals. (*Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 549-557 [116 Cal.Rptr. 245, 526 P.2d 253]; *Ascherman v. Saint Francis Memorial Hosp.* (1975) 45 Cal.App.3d 507, 511 [119 Cal.Rptr. 507].) The Supreme Court upheld the bylaw, stating, "We cannot conclude that the adoption and application of the bylaw here in question constitutes an abuse of the indicated discretion. Although it appears to place the initiative with respect to the production of evidence upon the party requesting the hearing in light of an adverse administrative recommendation, and although it further appears to require that the recommendation be sustained absent a 'clear and convincing' showing by that party that it should be overturned, it is clear that the bylaw read as a whole—especially when viewed in conjunction with the provision setting forth the grounds for appellate review before the governing board . . .—*contemplates a substantial showing on the part of the charging committee in support of its recommendation.*" (*Anton v. San Antonio Community Hosp., supra*, 19 Cal.3d 802, 829-830, fn. omitted, italics added.)

In *Pipkin v. Board of Supervisors, supra*, 82 Cal.App.3d 652, the plaintiff was a deputy sheriff acting as a jail matron who was discharged. The Shasta County ordinance made no provision for a predisciplinary hearing and required the disciplined employee to carry the burden of proof at the posttermination hearing. Plaintiff contended that she was denied due process by the terms of the ordinance which re-

quired her to bear the entire burden of proving that her discharge was improper.

In discussing this contention the court made the following pertinent comments on *Anton* and the requirements of due process: "The record demonstrates that the administrative proceeding was very informal, and permitted all evidence presented by the employer and plaintiff to be considered by the employee appeals board. Thus, basic due process was preserved. However, we do not mean to approve the Shasta County procedures as written. *Anton v. San Antonio Community Hosp.* does not support the placing of the burden of proof on the disciplined employee. Rather, the *Anton* court upheld the laws of a hospital which placed the burden of proof on the disciplined employees since it was 'clear that the bylaw read as a *whole*—especially when viewed in conjunction with the provision setting forth the grounds for appellate review before the governing board . . . contemplates a substantial showing on the part of the charging committee.' (Italics added.) (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 829-830 [140 Cal.Rptr. 442, 567 P.2d 1162].) In footnote 28 the Supreme Court clarifies its ruling, 'the bylaw in question, by indicating that the judicial review committee shall rule against the affected person absent a clear and convincing showing on his part that the recommendation of the charging committee "was arbitrary, unreasonable or not sustained by the evidence," strongly implies that substantial evidence in support of the recommendation must appear. . . . It is thus apparent that a decision unsupported by evidence viewed by the governing board as substantial—i.e., a decision based wholly upon the burdens of production and proof—is not contemplated by the bylaws.' (Italics omitted. *Anton, supra*, at p. 830, fn. 28.)

"Unlike the *Anton* regulations, the regulations set forth in the Shasta County code pertaining to employee appeals of disciplinary action merely require that 'In discharging, suspending or reducing in rank a permanent employee, the department head shall request the County Counsel to prepare an order, in writing, stating specifically the cause for such an action.' (§ 1111.) This section of the code is the only section that requires any affirmative duty on the part of the county to produce the reasons for the disciplinary action. By the code (ch. 8, Appeals), it is incumbent upon the disciplined employee to request what is in fact an initial hearing (§ 1122) and to carry the entire burden of proof (§ 1124). The applicable portions of the county code do not require the county to produce any evidence to sustain the charge. Thus, unlike the bylaw in *Anton*, section 1124 violates the axiom that, 'in disciplinary

administrative proceedings, the burden of proving the charges rests upon the party making the charges.' [Citations.]

"The regulation, on its face, appears to violate due process." (*Pipkin v. Board of Supervisors, supra*, 82 Cal.App.3d 652, 658-659.)

Nevertheless, in *Pipkin* the court reviewed the record and found that the hearing actually afforded did not deny Pipkin due process.

Thus, both in *Anton* and *Pipkin* the court concluded that in spite of the ostensible requirement that plaintiff carry the burden of proof, the record revealed that the agency exercising the disciplinary power did in fact assume the burden at some stage of the proceeding.

Unfortunately, our review of the record in this case does not reveal that the city ever assumed the burden of proving the charges. For the reasons heretofore stated, we conclude that appellant was denied due process in the posttermination hearing.

Since appellant was at that stage given a copy of all materials upon which the charges were based, including the supplemental written reports, and was given an opportunity to examine the officers who made the reports, including the officers who gave oral statements to the chief of police, we conclude that the posttermination hearing was sufficient to satisfy the requirements of *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d 194, 215. Consequently, appellant is entitled to back pay for the period between the abortive *Skelly* hearing and the hearing before the city manager. Whether he will be entitled to pay for the period thereafter will depend upon the result of proceedings to be taken pursuant to the writ issued herein.

Although the failure to afford appellant due process requires reversal of the trial court's order denying appellant's petition for writ of mandate, we consider appellant's additional contentions for the guidance of the parties in further proceedings in the case.

## C. *Bias*

Appellant contends that he was denied a fair hearing because the hearing officer was biased. He cites two reasons for the alleged bias, as follows: (1) the fact that Dr. Neal, the city manager, appeared in court in connection with a lawsuit regarding the 1973 incident involving ap-

pellant, and (2) the fact that several party guests at the recent incident have filed a civil suit against the city and various police officers.

The possible bias of the hearing officer resulting from these two facts is purely speculative. Even appellant concedes that the factual situation relating to the prior court appearance was "neither referred to or elaborated upon either at the administrative hearing or at the trial court level." ▪ The mere allegation of bias in the trial court without any evidence to support the allegation is insufficient to overcome the general rule that an issue or theory of the case that was not asserted in the trial court may not be raised for the first time on appeal. (See *Corcoran v. S. F. etc. Retirement System* (1952) 114 Cal.App.2d 738 [251 P.2d 59].) The reason for the rule is that if the issue is placed in issue in the trial court the opposing side will have an opportunity to rebut it. Where no evidence is produced, there is no opportunity to present rebuttal evidence.

## D. *Sufficiency of Evidence to Show Use of Unnecessary Force*

Appellant contends that there was insufficient evidence to support the findings that his use of force against O'Neal was without sufficient provocation.

▪ Appellant simply argues the credibility of the witnesses based upon the conflicting testimony, inconsistencies in the testimony of witnesses, the extent of their capacity to perceive or recollect the incident, and possible motive to fabricate because of their own involvement in the civil lawsuit. These are all matters of credibility for the trier of fact and subject to the rule that "'In reviewing the evidence ... all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary ... principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) [Citation.] The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict." (*Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689].)

If the findings had resulted after a fair administrative hearing at which appellant had been accorded due process, we could not hold that any essential finding in this case is unsupported.

### E. *The Standard of Review in the Trial Court*

Appellant contends that the trial court erroneously applied the substantial evidence test in reviewing the administrative record.

■ The parties agree that the proper standard of review is the independent judgment test, because the case involves a fundamental vested right. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].)

The trial court's finding of fact No. 2 reveals that the trial court also correctly perceived the independent judgment test to be the proper standard for review of the administrative record. However, in finding of fact No. 18 the court stated that, "based on a review of the administrative record, the findings of the hearing officer are supported by substantial evidence, more specifically: . . . ." The findings then set forth the factual findings with respect to the kicking and striking incident. Further, in finding No. 19, the court stated that "because the findings are supported by substantial evidence, the hearing officer did not abuse his discretion in ruling the way he did."

It is therefore unclear which standard of review the trial court actually employed. However, since the judgment must in any event be reversed, it is unnecessary for us to resolve this problem. Presumably, if the matter again reaches the superior court, the proper standard will be used.

Appellant's remaining contentions refer to the propriety of the disciplinary action. Since a new hearing may not produce the same record, no further review of this record would serve any useful purpose.

The judgment is reversed and the case is remanded to the trial court with instructions to issue a peremptory writ of mandate compelling the city to set aside its decision sustaining the termination of appellant from employment with the city; to reconsider its decision, following a hearing conducted pursuant to a fair procedure which accords with the requirements of due process; and pending the hearing, to pay appellant back

pay for the period between the date of his termination and the date of the hearing before the city manager.

Kaufman, Acting P. J., and Tamura, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.