**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KARIN WHITE, an individual,
 *Plaintiff-Appellant,*

 v.

CITY OF PASADENA, a governmental
entity; CITY OF PASADENA POLICE
DEPARTMENT, a governmental
entity; BERNARD K. MELEKIAN, an
individual,
 *Defendants-Appellees.*

No. 08-57012

D.C. No.
2:08-cv-03390-R-
JWJ

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued March 2, 2010
Submitted January 5, 2012
Pasadena, California

Filed January 17, 2012

Before: William C. Canby, Jr., Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Richard A. Love, Esq., Kathleen M. Erskine, Esq., Law Offices of Richard A. Love, Los Angeles, California, for plaintiff-appellant Karen White.

Richard R. Terzian, Esq., Robert J. Tyson, Esq., Burke, Williams & Sorensen, LLP, Los Angeles, California, for defendants-appellees City of Pasadena, et al.

## OPINION

IKUTA, Circuit Judge:

After her first termination from the City of Pasadena Police Department and subsequent reinstatement, Karin White brought a lawsuit in state court claiming that she had been discriminated against and harassed by the City due to its per-

ception that she had a disability. After her second termination, she reiterated her discrimination and harassment claims in an administrative proceeding, where she also argued that the termination was retaliatory. Both of White's actions resulted in a decision in favor of the City. White now brings claims in federal court based on the same theories litigated in state proceedings. We conclude that California principles of issue preclusion prevent us from reaching these issues here.

## I.

The lengthy course of litigation at issue in this case began with the City's attempted termination of White in 2004. The City had hired White as a police officer in 1996. Two years later, White was diagnosed with relapsing/remitting multiple sclerosis, which her doctor said would not limit her performance of her official duties. In November 2004, the City terminated White for allegedly associating with a known drug dealer (who was also the father of her son) and for lying to the department about her relationship with him. The City based this decision on telephone recordings between the drug dealer and White, which had been obtained through a wiretap of the drug dealer's phone. White challenged the termination by pursuing a grievance proceeding, as allowed under the Memorandum of Understanding (MOU) between the City of Pasadena and the Pasadena Police Officer's Association. The arbiter issued an advisory opinion concluding that the City had violated state and federal wiretap laws in recording her conversations, and the City's disciplinary action was barred by the applicable one-year limitations period. *See* Cal. Gov. Code § 3304(d). After receiving this ruling, the City reinstated White on the statute of limitations ground. White returned to work as a police officer on July 15, 2005.

## A

White filed the first action at issue in this case in December 2005 ("*White I*"). White's complaint, filed in the state superior court, alleged that:

> defendants entered into a pattern or plan of discrimination and harassment against plaintiff by attempting to force plaintiff to resign, or to terminate plaintiff, from employment due to the incorrect assumption or perception, and prejudice, by defendants that plaintiff suffered from or had or suffered from a disability due to the November, 1998 Multiple Sclerosis flare up and diagnosis.

She also alleged that the department had illegally used tape-recorded conversations in the internal affairs investigation that led to her November, 2004 termination. Finally, she alleged that the City's discrimination and harassment based on her perceived disabilities had continued after her return to work and constituted a continuing violation. Among other things, she claimed that she had been removed from the "coveted position" of Community Outreach, was not reinstated, and was subjected "to further discrimination and harassment by her superiors in their criticism, critique, and evaluation of her job performance, and unfounded disciplinary actions."

According to White, all of these actions amounted to "discrimination based upon a perceived physical disability," and unlawful harassment based on an actual or perceived disability, both of which violated the California Fair Employment and Housing Act (FEHA). *See* Cal. Gov. Code §§ 12926(l) (defining "physical disability"), 12940(a) (generally making it an "unlawful employment practice" to discriminate on the basis of physical disability); Cal. Gov. Code §§ 129240(j)(1) (making it unlawful to harass an employee because of a disability). In addition to these two FEHA causes of action, she alleged that the City's use and disclosure of wiretaps recording her conversations with the drug dealer violated her right to privacy under California law. *See* Cal. Penal Code §§ 631, 637.2.

On April 2, 2007, after a lengthy trial, the jury returned a special verdict finding that the City did not "take an adverse

employment action against [White] based on its knowledge or belief that she had a disability," and that White was not "subjected to unwanted harassing conduct by a supervisor . . . because she was believed to have a disability." The jury also found that the City had illegally used "conversations, which had been tape recorded without [White's] consent, to initiate an internal investigation into the conduct of [White]," that the use of these conversations was a "substantial factor in causing harm" to White, and that White had suffered $1,000,000 in damages as a result. The trial court denied White's discrimination and harassment claim under FEHA, but trebled the damages award for her right to privacy claim under the applicable statute, and entered judgment for White in the amount of $3,000,000.

Both the City and White appealed. The California Court of Appeal rejected White's appeal from the jury verdict against her on the disability discrimination cause of action. *White v. City of Pasadena*, No. B200594, 2009 WL 1234094, at *1 (Cal. Ct. App. May 7, 2009). The court also reversed the verdict as to White's privacy claims, holding that the City was immune from civil liability for invasion of privacy. *Id.* at *6; *see* Cal. Gov. Code § 821.6. The California Supreme Court denied White's petition for review on August 12, 2009.

B

On June 25, 2006, before trial began in *White I*, White was shot in the face in her home. As subsequently explained by the California Court of Appeal, "[t]he only other person present was her 18-year old son, Kamron Williams." *White v. City of Pasadena*, No. B221687, 2011 WL 3130626, at *1 (Cal. Ct. App. July 26, 2011). The son "told the 911 operator, as well as deputies who arrived on the scene, that his mother had shot herself." *Id.* at *1. White "denied having attempted suicide, and told a sheriff's investigator that she had been accidentally shot while struggling with Williams in an attempt to prevent him from shooting himself." *Id.* Both the Los Angeles

Sheriff's Department and the Pasadena police department conducted investigations of the incident; both concluded that White had attempted suicide. The City adopted this conclusion and thereupon ruled that White had made false statements about the shooting incident to the Sheriff's Department and the police department. The City terminated White on August 30, 2007 on this basis.

White again pursued an administrative appeal of her termination. These administrative proceedings, and their subsequent review on a writ of mandamus, constitute the second action at issue in this case ("*White II*"). Under the terms of the MOU, if an employee cannot resolve a grievance with the employee's immediate supervisor or department head, the employee is entitled to advisory arbitration. The employee (and employer) may submit issues to an arbiter, who holds a hearing where parties can introduce witnesses and documents. Following the hearing, the arbiter prepares a written advisory opinion "which shall not be binding on either party, and shall be limited to the issue, or issues, presented to the arbiter." That advisory opinion is sent to the City Manager, who makes the final decision as to what action, if any, the City will take. The employee is entitled to representation throughout the grievance process.

In White's administrative appeal of the second termination, the parties submitted briefs in October 2008, and the administrative hearing commenced in November. The arbiter defined the issues before him as:

> 1. Was there just cause to terminate Karin White's employment with the City?
>
> 2. Was the [Police] Department's action timely under Government Code § 3304(d)?
>
> 3. If the answer to either question is no, what is the appropriate remedy?

Both White and the City made opening statements, called witnesses, admitted exhibits, and filed closing briefs. During the hearing, White introduced evidence that the City's investigation and her termination were in retaliation for the *White I* lawsuit.

In his written advisory opinion, the arbiter stated that the key question with respect to the "just cause" issue was whether the City carried its burden of proving that White attempted to commit suicide. The arbiter ultimately concluded that the City did not carry its burden of proof on this issue, and that White had been "the victim of a sloppy and biased investigation and report." In light of this determination, the arbiter stated that he could not "reach a conclusion that White was the victim of retaliation" by the Chief of Police. The arbiter also found that the City's termination of White was untimely under state law. *See* Cal. Gov. Code § 3304(d). The arbiter therefore recommended that White be reinstated with full back pay and benefits.

As required in the MOU, the arbiter's advisory opinion, along with a transcript of the proceedings, was sent to the City Manager. In a separate written opinion, the City Manager stated that he had made an independent review of the "entire record in this matter, including the advisory opinion, transcript, admitted exhibits and closing briefs of both sides." On the basis of this review, the City Manager upheld the decision to terminate White. The opinion set forth the City Manager's analysis of the evidence adduced at trial, and provided the City Manager's reasons for concluding that the City had carried its burden of proving that White attempted to kill herself. With respect to White's claims that the City's disciplinary action was retaliatory, the opinion stated that these claims were "not persuasive." Among other things, the opinion explained, "[t]he independent Sheriff's Department and their investigators would need to be part of the retaliation for Ms. White's theory to be true," and there was no support in the record for such a claim. The City Manager also concluded

that the discipline was timely, and not barred by the statute of limitations.

White sought review of the administrative decision by filing a writ of mandamus with the California Superior Court pursuant to section 1094.5 of the California Civil Procedure Code. The California Superior Court reviewed the evidence, exercising its independent judgment, and concluded that the City had just cause to terminate White. Specifically, the court found that the evidence that White shot herself was stronger than the evidence supporting White's version of events. Accordingly, the court denied the petition for mandate.

White appealed the state trial court's decision to the California Court of Appeal, which upheld the City Manager's decision after reviewing the history of White's dispute with the City. *White II*, 2011 WL 3130626. First, the appellate court determined that the discipline imposed on White had not been barred by the statute of limitations. *Id.* at *9-14. Second, the appellate court determined that substantial evidence supported the trial court's finding that the evidence more strongly supported the City's version of events, and therefore affirmed the Superior Court's decision. *Id.* at *15-17

White did not seek review of the decision by the California Supreme Court, and the decision therefore became final on August 25, 2011.

C

On May 2, 2008, while *White I* was on appeal, and the administrative proceedings in *White II* challenging White's second termination were still pending, White filed a second complaint against the City in California Superior Court ("*White III*"). The complaint alleged that defendants "entered into a pattern or plan of discrimination and harassment against plaintiff by attempting to force plaintiff to resign, or to terminate plaintiff from employment with defendants" due to a per-

ception that plaintiff had a disability.[1] According to the complaint, the City's plan included illegally wiretapping her conversations in order to have a basis for its first termination. These factual allegations were largely identical to those in *White I*.

The complaint also alleged that the City's plan included the August 30, 2007 termination of her employment based on its false allegations that she attempted to commit suicide and lied to the law enforcement agencies investigating the incident. Further, the complaint alleged that the City's conduct, including the August 30, 2007 termination, was motivated by retaliation for White's legal actions against the City in *White I*, including her disclosure of the City's violation of wiretap laws. White alleged that the City's plan to remove her from her position is a continuing violation.

Based on these factual allegations, the complaint asserted five causes of action. First, it asserted a cause of action for employment discrimination on the basis of White's perceived disabilities in violation of FEHA, and a separate cause of action for harassment on the same basis. Second, the complaint asserted three causes of action based on the allegation that the City's improper conduct was retaliatory. The complaint asserted causes of action for a violation of FEHA based on the City's alleged retaliation against White for her suit against the City, a violation of section 1102.5 of the California Labor Code based on the City's alleged retaliation against White for disclosing the City's violation of wiretap laws, and a claim under 42 U.S.C. § 1983 for putative violations of White's First and Fourteenth Amendment rights, based on the City's alleged retaliation in response to White's civil actions.

---

[1]Unlike *White I*, this complaint alleged that the City's perception of disability was based not only on her 1998 multiple sclerosis diagnosis, but also on certain orthopedic injuries that occurred in 1998 and 2002. White does not argue on appeal that the complaint's allegation that the City had another reason for erroneously perceiving her to be disabled affects our analysis, and therefore we do not consider it here.

In light of White's § 1983 claim, the City removed *White III* to federal court on May 22, 2008. The City then moved to dismiss or stay the action pending the outcome of her appeal in *White I* and the administrative proceedings relating to her second termination. In November 2008, the district court dismissed *White III* without prejudice, noting that the pending state proceedings would likely have a preclusive effect on the *White III* litigation.

White filed her notice of appeal on December 13, 2008. On appeal, the City argued that White's claims arising from her first termination could not be relitigated, because they had already been decided in *White I*. Further, the City asserted that any claims arising from White's second termination were premature, because White had not yet exhausted her state law remedies in litigating *White II*.

On March 2, 2010, we stayed the appeal in *White III* pending the final outcome of *White II*. After the state appellate court ruled in favor of the City in *White II*, the parties provided supplemental briefing on that decision's preclusive effect. White asserts that we need not consider the effect of claim preclusion on her appeal of *White III* because *White II* does not have preclusive effect, and the claims in *White III* are not the same as the claims in *White II*. Further, White asserts that issue preclusion is not applicable because the issues in *White III* are not identical to the issues in *White II*, and the claims in the two actions involve different legal standards. In contrast, the City argues that *White I* and *White II* preclude all the claims and issues in *White III*, which must therefore be dismissed. In light of this additional briefing, we now consider the preclusive effect of *White I* and *II* on the current federal proceedings.

## II.

We begin by considering the framework for analyzing when a state court decision has a preclusive effect on a federal proceeding.

A

**[1]** The Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The First Congress enacted the predecessor of 28 U.S.C. § 1738 to implement this Constitutional provision and extend its effect to the federal courts. Section 1738 provides that the "Acts, records, and judicial proceedings" of "any State . . .of the United States . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Under this statute, a federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984). The same rule applies to administrative proceedings that have been upheld by state courts. *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 326-27 (9th Cir. 1995). As *Clements* explained, "[a]lthough different preclusion rules apply in some circumstances to *unreviewed* findings of administrative proceedings, section 1738 by its own terms applies when administrative findings have been reviewed by state courts of general jurisdiction." *Id.* (internal quotation marks, citations, and emphasis omitted). This rule applies when state courts review administrative decisions under section 1094.5, California's administrative mandamus statute. *See Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988). The only exception "is that we do not give preclusive effect to judgments rendered in proceedings that fail to comply with the minimum standards of due process." *Clements*, 69 F.3d at 328.

**[2]** In determining the preclusive effect of a state administrative decision or a state court judgment, we follow the state's rules of preclusion. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982). For purposes of clarity, however, we will use the Supreme Court's current terminology to describe

these doctrines. According to the Court, "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' " *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "[C]laim preclusion" is the doctrine providing that "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)) (internal quotation marks omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal quotations marks omitted) (quoting *New Hampshire*, 532 U.S. at 748-49). Accordingly, in considering the preclusive effect of a state ruling, we will refer to the doctrines of "claim preclusion" and "issue preclusion" as defined in *Sturgell*, subject to any differences as a matter of California law.

**[3]** The rules of claim and issue preclusion apply equally to § 1983 actions in federal courts. *Allen v. McCurry*, 449 U.S. 90, 98 (1980). Nothing in § 1983 "expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738." *Id.* at 97-98. State court decisions and reviewed administrative decisions are thus entitled to the same preclusive effect in a § 1983 action as in any other action, namely the preclusive effect they would be given in the courts of the state that issued the judgment. *Migra*, 465 U.S. at 83.

B

We next review California's preclusion principles, as applicable here.

The California Supreme Court established its general rules for issue preclusion in the seminal case of *Lucido v. Superior*

*Court*, 795 P.2d 1223 (Cal. 1990). According to *Lucido*, the doctrine of issue preclusion "precludes relitigation of issues argued and decided in prior proceedings," when six criteria are met. *Id.* at 1225. These criteria are: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) the issue to be precluded "must have been actually litigated in the former proceeding"; (3) the issue to be precluded "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and (6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id.* at 1225-27.

**[4]** California's claim preclusion doctrine provides that a "valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." *Slater v. Blackwood*, 543 P.2d 593, 594 (Cal. 1975). In determining what constitutes the "same cause of action," California applies "the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action." *Id.*

**[5]** Under California law, a prior administrative proceeding, if upheld on review (or not reviewed at all), will be binding in later civil actions to the same extent as a state court decision if "the administrative proceeding possessed the requisite judicial character." *Runyon v. Bd. of Tr.*, 229 P.3d 985, 994 (Cal. 2010) (internal quotation marks and citations omitted). In order to possess the requisite judicial character, the administrative agency must "act[ ] in a judicial capacity and resolve[ ] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *People v. Sims*, 651 P.2d 321, 327-38 (Cal. 1982) (emphases omit-

ted), *superseded by statute on another ground as stated in Gikas v. Zolin*, 863 P.2d 745, 751-52 (Cal. 1993). To determine whether the agency is acting in a judicial capacity, the state court considers a number of factors, including whether:

> (1) the administrative hearing was conducted in a judicial-like adversary proceeding; (2) the proceeding required witnesses to testify under oath; (3) the agency determination involved the adjudicatory application of rules to a single set of facts; (4) the proceedings were conducted before an impartial hearing officer; (5) the parties had the right to subpoena witnesses and present documentary evidence; and (6) the administrative agency maintained a verbatim record of the proceedings.

*Imen v. Glassford*, 247 Cal. Rptr. 514, 518 (Cal. Ct. App. 1988). In addition, a court may consider "whether the hearing officer's decision was adjudicatory and in writing with a statement of reasons," and whether the hearing officer's decision was adopted by the director of the agency "with the potential for later judicial review."[2] *Id.* Applying this test, *Imen* determined that the administrative proceeding at issue in that case met the "judicial character" requirements. *Id.* That proceeding (like the proceeding required under the MOU) involved an adjudicatory hearing, which included witnesses testifying under oath, the right to cross-examine and confront adversary witnesses, the right to be represented by counsel, and the right to a formal decision. *Id.* at 519. In the *Imen* proceeding, the administrative law judge made recommendations to a decision-maker (who, like the City Manager in this case, was free to accept or reject them), and a party dissatisfied

---

[2]California's "judicial character" test is substantially the same as the Supreme Court's test for determining whether a federal court should give an unreviewed state administrative proceeding preclusive effect under the federal common law. *See United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422 (1966).

with the administrative decision could compel judicial review.
*Id.*

## III.

We now apply these principles to this case to determine
whether and to what extent *White I* and *White II* may bar reli-
tigation of claims or issues in *White III*. We conclude, under
California's doctrine of issue preclusion, that *White I* pre-
cludes White from arguing that the City's actions constituted
discrimination or harassment based on perceived disabilities,
and that *White II* precludes White from arguing that the City
did not have an adequate justification for her termination, or
that the proffered explanation for her termination was a pre-
text for a retaliatory intent.

### A

**[6]** We first consider the preclusive effect of *White I*.
White argues that under California case law, neither the
claims nor the issues decided in that state court decision meet
the criteria to bar relitigation of any claims or issues raised in
*White III*. Specifically, White asserts that she could not have
litigated the claims arising from her August 2007 termination
in *White I*, because the termination had not yet occurred. We
agree that *White I* does not preclude White from asserting
claims related to her second termination. Nevertheless, issues
decided in *White I* do preclude relitigation of issues underly-
ing the FEHA claims in *White III*, because the allegations
supporting the claims of discrimination and harassment in
*White III* were all alleged in *White I*. In *White I*, the jury ver-
dict (upheld on appeal) resolved two key issues by rejecting
White's allegations that the City was engaged in discriminat-
ing against her and harassing her on the basis of a perceived
disability. White makes the same allegations of discrimination
and harassment on the basis of perceived disability in her
complaint in *White III*. Because all the *Lucido* factors for
issue preclusion are met, the jury's rejection of these allega-

tions is binding on us. The issues to be decided are identical: both cases base FEHA claims on allegations that the City engaged in a continuing program of discrimination and harassment on the basis of White's perceived disabilities. Because the jury in *White I* concluded that the City did not have such a program, the fact that the complaint in *White III* makes the bare allegation that the program continued during the period after *White I* is insufficient to raise a new issue. Continuing with the *Lucido* factors, the factual allegations were necessarily decided pursuant to the special verdict form, the decision in *White I* was on the merits, the parties were identical, and applying issue preclusion to these issues is consistent with the public policies identified by the California courts, as it prevents relitigation of issues decided by a jury after a full trial and upheld on appeal. Therefore, White is precluded from arguing that the City's actions constituted discrimination or harassment on the basis of a perceived disability.

B

We next consider the preclusive effect of *White II*.

**[7]** Because *White II* was an administrative proceeding upheld on review by the state trial and appellate courts, *White II* is binding in this case to the same extent as a state court decision if it has "the requisite judicial character," *Runyon*, 229 P.3d at 994 (quoting *State Bd. of Chiropractic Exam'rs v. Superior Court*, 201 P.3d 457, 463 (Cal. 2009)), as defined in *Imen,* 247 Cal. Rptr. at 518. Reviewing the *Imen* factors, we conclude that the City's administrative proceeding did have such judicial character. White's grievance proceeding was conducted in a judicial-like adversarial hearing in front of an impartial arbiter. Both White and the City were able to call and subpoena witnesses and elicit their testimony under oath, and to present oral and written argument. A verbatim transcript of the proceedings was produced. The City Manager was bound to apply the provisions of the MOU to the facts

developed at the proceeding, and the City Manager issued a written decision with factual findings and reasoned explanations for his decision. Judicial review was available under section 1094.5, and was pursued by White. Thus, the administrative proceeding possessed the majority of the indicia of "judicial character" identified in *Imen*. 247 Cal. Rptr. at 518 (internal quotation marks omitted).

White argues that the administrative proceeding in *White II* was not judicial in character because the proceeding was presided over by an arbiter whose decision was advisory only, while the City Manager had "unabridged discretion" to make the final decision.[3] But the adversary proceedings in this case are indistinguishable from the proceedings in *Imen*: both involved an adversary hearing that resulted in an advisory opinion and a decision-maker who was empowered to accept, reject, or modify that advisory opinion, *see id.* at 519; *see also* Cal. Gov. Code § 11517. Nor did the City Manager have unbridled discretion in making his decision; the decision was based upon the record created in the arbitration proceedings, and was constrained by the terms of the MOU and applicable state law. Therefore, we reject White's argument that the administrative proceedings lacked the required "judicial character."

White also argues that *White II* cannot have an issue preclusive effect because in the mandamus proceeding, she had the burden of establishing that the City's determination was contrary to the weight of the evidence, *Fukuda v. City of Angels*, 977 P.2d 693, 696 (Cal. 1999), while in a regular civil lawsuit, she would merely have to prove her case by a preponder-

---

[3]In making this argument, White urges us to follow an unpublished district court decision, *Eaton v. Siemens*, No. CIV. S-07-315 FCD KJM, 2007 WL 1500724, at *5 (E.D. Cal. May 23, 2007), which held that a similar process failed to meet the *Utah Construction* factors. We find this unpublished opinion unpersuasive, and in any event, it does not consider California law on this point.

ance of the evidence. Because under California law, a prior judicial decision cannot have issue preclusive effect if the plaintiff had a higher burden of proof in the earlier proceeding than in the later proceeding, *see Simpson v. Brown*, 79 Cal. Rptr. 2d 389, 401 (Cal. Ct. App. 1998), White claims that the *White II* decision cannot be preclusive here.

We reject this argument, however, because the prior opinion at issue here is not the state mandamus proceeding but the administrative agency decision, which was reviewed by the state mandamus court and therefore has preclusive effect under California law. *Clements*, 69 F.3d at 326-27. In those administrative proceedings, the City had the burden of proving the charges against White by a preponderance of the evidence, as the City Manager recognized in his opinion. *See Parker v. City of Fountain Valley*, 179 Cal. Rptr. 351, 359 (Cal. Ct. App. 1981) ("It is axiomatic, in disciplinary administrative proceedings, that the burden of proving the charges rests upon the party making the charges."). Accordingly, White did not have a higher burden of proof in the earlier administrative proceeding than in federal court; rather, she was relieved of any burden of proof in the administrative proceeding. This argument against the preclusive effect of *White II* also fails.

Because *White II* has the same preclusive effect as a state court decision, White may not relitigate issues argued and decided in *White II*, if the *Lucido* criteria are met. The complaint in *White III* alleges three claims based on the theory that White's second termination was based on the City's intent to retaliate against her, namely, the claims that the City's discriminatory and harassing conduct was motivated by retaliation for White's suit against the City in *White I*, that the City discharged her in retaliation for disclosing the City's violation of wiretap laws, and the claim that her First and Fourteenth Amendment rights were violated by the City's actions against her in retaliation for her civil actions against the City. Because *White II* already determined that White's termination

was not retaliatory, and that the City had just cause to terminate White, the retaliation-based claims in *White III* cannot go forward if *White II's* determinations are binding.

**[8]** We hold that the state administrative decisions on these issues are binding in federal court, because the issues decided in *White II* meet the *Lucido* factors. Both cases raise the same issue: whether White's second termination was in retaliation for *White I*. We reject White's argument that the issue whether her termination by the City was retaliatory was not actually litigated and decided in *White II*. White argued in the administrative proceeding in *White II* that the City had acted with retaliatory intent; both her opening statement and her closing brief included such arguments. Indeed, the theory of her case in front of the arbiter was that the City had decided to terminate her to "get even" and "make an example of her" because she had the "temerity" to sue the department. The City Manager expressly rejected these assertions of retaliation, finding that they were "not persuasive." The determination that White's termination was not retaliatory was necessary to the City Manager's decision. *See Castillo v. City of Los Angeles*, 111 Cal. Rptr. 2d 870, 876 (Cal. Ct. App. 2001) ("Further, if the hearing examiner were to have found that the reasons for discharge were merely a pretext for discrimination, she would not have found the discharge was appropriate."). Continuing with the *Lucido* factors, *White II* and *White III* involved the same parties. Finally, allowing White to relitigate this issue now would be contrary to the public policy concerns underlying the issue preclusion doctrine, given that the issue has been fully litigated and decided against White on the merits, and that decision has been upheld by both the state trial and appellate courts. Because we are bound by the administrative decision that the City had just cause to terminate White, and the City's termination was not retaliatory, there is nothing left of White's three claims of retaliatory termination.

## IV.

In sum, applying California principles of issue preclusion, *White I* precludes White from arguing that the City discriminated against or harassed her based on her perceived disabilities. *White II* precludes White from arguing that the City did not have an adequate justification for her termination, or that the proffered explanation for her termination was a pretext for a retaliatory intent. Because § 1738 requires us to apply California's issue preclusion principles in federal court, there is nothing left of *White III*, and we therefore affirm the district court's order dismissing her complaint.[4]

**AFFIRMED.**

---

[4]Because we decide the case on issue preclusion grounds, we do not reach the claim preclusion arguments of the parties.